Entered: October 3rd, 2017
Signed: October 2nd, 2017

**SO ORDERED**



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re: )
) Chapter 11
FIRST FLIGHT LIMITED PARTNERSHIP, )
) Case No.: 17-18645
Debtor. )
_____ )

### SECOND INTERIM CONSENT ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO WASHINGTONFIRST BANK PURSUANT TO 11 U.S.C. § 363

First Flight Limited Partnership (the "**Debtor**") and WashingtonFirst Bank ("**WashingtonFirst Bank**"), by their undersigned counsel, hereby enter into this *Interim Consent Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to WashingtonFirst Bank Pursuant to 11 U.S.C. § 363* (the "**Order**"), and STIPULATE AND AGREE as follows:

### Background

A.      On June 25, 2017 (the "**Petition Date**"), the Debtor commenced this Chapter 11 bankruptcy case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* as amended (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Maryland (the "**Court**").

Exhibit 2

B.     The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

C.     As of the date of this Order, the Office of the United States Trustee has not appointed an Official Committee of Unsecured Creditors in this case.

D.     The Debtor is a Virginia limited partnership that owns and operates commercial properties in Hagerstown, Maryland.

## The Prepetition Secured Loan

E.     Prior to the Petition Date, WashingtonFirst Bank extended a $5,650,000.00 commercial loan (the "Loan") to the Debtor, as evidenced by, among other things: (a) a Term Note, dated June 12, 2008, executed and delivered by the Debtor to the order of WashingtonFirst Bank in the original principal amount of $5,650,000.00 (the "Note"); (b) a Credit Agreement, dated October 11, 2013, by and between the Debtor and WashingtonFirst Bank (the "Loan Agreement"); and (c) various other documents.

F.     The indebtedness and obligations owed by the Debtor to WashingtonFirst Bank under the Note and the Loan Agreement are secured by first-priority duly perfected liens and security interests in, to and against certain real property and other assets of the Debtor pursuant to, to the extent provided for in and as more particularly described in the following documents: (i) an *Indemnity Deed of Trust, Security Agreement and Fixture Filing*, dated June 12, 2008, executed by the Debtor for the benefit of WashingtonFirst Bank, and recorded among the Land Records for Washington County, Maryland (the "**Land Records**") in Liber 3511, folio 0609 (the "**Deed of Trust**"); (ii) a *Refinance Assignment of Rents and Leases*, dated June 12, 2008, executed and delivered by the Debtor in favor of WashingtonFirst Bank, and recorded among the aforesaid Land Records in Liber 3511, folio 0659 (the "**Assignment of Leases**"); (iii) a *General Security Agreement*, dated June 13, 2008, executed and delivered by the Debtor in favor of

WashingtonFirst Bank; and (iv) certain UCC-1 Financing Statements from the Debtor in favor of WashingtonFirst Bank and recorded among the aforesaid Land Records and with the Virginia State Corporation Commission (collectively with the Deed of Trust and the Assignment of Leases, the "**Security Documents**").

G.    The Note, the Loan Agreement, the Security Documents, all other documents evidencing, securing, guarantying or otherwise documenting the indebtedness and obligations owed under the Loan, and all other documents relating thereto and/or executed in connection therewith, are hereafter collectively referred to as the "**Loan Documents**".

<u>**Confirmation of Prepetition Collateral**</u>

H.    All indebtedness and obligations owed by the Debtor to WashingtonFirst Bank under the Loan Documents (including, all principal, accrued and unpaid interest, late charges, taxes, appraisal fees, attorneys' fees and expenses, and all other sums now or hereafter due or payable to WashingtonFirst Bank under the Loan Documents), are secured by, *inter alia*,:

(a)    a first-priority duly perfected deed of trust lien and security interest in, to and against (i) certain real property of the Debtor generally known as Unit 1 shown on the Condominium Plat of First Flight Air Park Condominium, Inc. as recorded in Plat No. 429 and 430 in the Land Records of Washington County, Maryland  (the "Property"), (ii) all other assets of the Debtor described in the Security Documents and/or located at the Property, and (iii) all products and proceeds of any of the foregoing assets, pursuant to and as more particularly described in the Deed of Trust; and

(b)    first-priority duly perfected liens in and assignments of the Debtor's right, title and interest in and to, inter alia: (i) all present and future leases and other agreements relating to the Property (collectively, the "Leases"); and (ii) all rents, security deposits, income, receipts, revenues, issues, profits and other sums now or hereafter due or payable

to the Debtor as a result of or in connection with the Leases or the Property (collectively, the "Rents"), pursuant to and as more particularly described in the Deed of Trust and the Assignment of Leases.

I.     The Property, the Leases, the Rents, and all other assets that serve as security for the indebtedness owed to WashingtonFirst Bank under the Loan Documents are hereafter collectively referred to as the "**Prepetition Collateral**".

### Confirmation of Indebtedness and Prepetition Liens

J.     WashingtonFirst Bank asserts that as of June 28, 2017, the indebtedness owed by the Debtor to WashingtonFirst Bank under Loan Documents, excluding costs, expenses and attorneys' fees, amounted to $4,105,572.26, consisting of principal in the amount of $3,968,449.71, accrued and unpaid interest in the amount of $78,871.56 and late charges in the amount of $58,250.99.   All indebtedness owed to WashingtonFirst Bank under the Loan Documents, including, without limitation, all principal, accrued and unpaid interest, late charges, costs, expenses and attorneys' fees owed thereunder, is hereafter collectively referred to as the "**Indebtedness**".

         (i)     that all of the Loan Documents are valid and binding and fully enforceable against the Debtor in accordance with their terms; and

         (iii)    WashingtonFirst Bank holds valid, enforceable and properly perfected first-priority liens and security interests in, to and against all of the Prepetition Collateral, including, *inter alia*, the Property, the Leases, the Rents, and all products and proceeds thereof;

### The Debtor's Need for Use of Cash Collateral

K.     All cash, products and proceeds of the Prepetition Collateral (including all Rents) that come into the possession, custody or control of the Debtor (both prepetition and post-petition)

constitute WashingtonFirst Bank's cash collateral (collectively, the "**Cash Collateral**") as that term is defined under Section 363(c)(1) of the Bankruptcy Code.

L.      The Debtor has filed a *Consent Motion for Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to WashingtonFirst Bank Pursuant to 11 U.S.C. § 363* (the "**Motion**").

M.      An immediate need exists for the Debtor to obtain use of WashingtonFirst Bank's Cash Collateral to fund its critical business operations.   A schedule of the Debtor's cash requirements is set forth in the budget (the "**Budget**") attached hereto as **Exhibit A** and incorporated by reference herein.

N.      The Debtor is not authorized to use WashingtonFirst Bank's Cash Collateral absent WashingtonFirst Bank's consent to such usage and the entry of an order of this Court authorizing such use pursuant to applicable bankruptcy law.   In all circumstances, WashingtonFirst Bank is entitled to adequate protection of its interest in the Cash Collateral pursuant to Sections 361 and 363(e) of the Bankruptcy Code, including, without limitation, compensation to WashingtonFirst Bank for any loss or diminution in the value of the Cash Collateral resulting from the Debtor's use of the same pursuant to this Order.   WashingtonFirst Bank is willing to consent to the Debtor's use of Cash Collateral pursuant to the terms and conditions of this Order.

O.      Good and sufficient cause has been shown for the entry of this Order.   Among other things, the entry of this Order will minimize the disruption of the Debtor's existing business and enable the Debtor to, *inter alia*, fund its critical business operations, pay taxes, insurance and other carrying costs related to the Property, and maintain adequate cash resources to administer and preserve the value of the Debtor's business.

**NOW THEREFORE**, upon consideration of the Motion and the foregoing stipulations and admissions of the Debtor and WashingtonFirst Bank, it is by the United States Bankruptcy Court for the District of Maryland, hereby, **ORDERED, ADJUDGED AND DECREED**:

1.    <u>Incorporation by Reference</u>.  The foregoing stipulations and admissions of the Debtor and WashingtonFirst Bank are incorporated by reference into this Order.

2.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (M), and (O), involving matters concerning the use of cash collateral under Section 363 of the Bankruptcy Code.  Venue over this matter is proper in this Court pursuant to 28 U.S.C. § 1408.

3.    <u>Notice</u>.  The Debtor has provided adequate and proper notice of the Motion and this Order to WashingtonFirst Bank, the Office of the United States Trustee for the District of Maryland, and all creditors and other parties-in-interest in this Chapter 11 Case in accordance with Sections 102, 105, 361, and 363 of the Bankruptcy Code and Federal Bankruptcy Rule 4001, and no other or further notice need be provided as a condition to the entry of this Order.

4.    <u>Consent of WashingtonFirst Bank</u>.  Subject to the entry and continued effectiveness of this Order, WashingtonFirst Bank consents to the Debtor's use of Cash Collateral pursuant to the Budget and the other terms and conditions contained herein. Notwithstanding WashingtonFirst Bank's consent to the Debtor's use of Cash Collateral pursuant to this Order, nothing contained herein shall limit or prohibit WashingtonFirst Bank from objecting to any relief sought by the Debtor in this Chapter 11 Case, including, without limitation, any request for DIP Financing[1] or any motion requesting further use of WashingtonFirst Bank's Cash Collateral.  Furthermore,

---

[1] The term "**DIP Financing**" means any debtor-in-possession financing facility, cash loans or liquidity facility to be provided to the Debtor pursuant to Section 364 of the Bankruptcy Code and to be secured by liens on and against property of the Debtor's estate.  Any party that agrees to provide the Debtor with DIP Financing shall be referred to as a "**DIP Lender**".

nothing in this Order shall in any way restrict the scope of WashingtonFirst Bank's liens and security interests in the Prepetition Collateral or otherwise impair WashingtonFirst Bank's liens, security interests, setoff rights, or claims with respect to the Indebtedness or the Prepetition Collateral, or any Rents, products, proceeds, receipts or profits thereof. WashingtonFirst Bank's liens, security interests, setoff rights, and claims against the Prepetition Collateral and the Rents, products, proceeds, receipts and profits thereof shall extend to the fullest extent permitted by Section 552(b) of the Bankruptcy Code. This Order shall be subject to the right of WashingtonFirst Bank to terminate its consent to the Debtor's use of Cash Collateral as provided in this Order or the expiration of such consent on the date set forth herein.

5.     <u>Authorization to Use Cash Collateral; Monthly Monitoring; Termination</u>. Provided that no Event of Default (as defined below) occurs under this Order, the Debtor is authorized to use WashingtonFirst Bank's Cash Collateral subject to the terms and conditions set forth below:

(a)     <u>Authorized and Prohibited Uses; Budget</u>. The Debtor is authorized to use Cash Collateral for the period beginning on the date of this Order and continuing to and until 4:00 p.m. on November 30, 2017, but shall only use Cash Collateral during such time period in the amounts and category limits set forth in the Budget. The Debtor shall not: (i) loan or advance any money to any person or entity for any reason; (ii) pay any dividend, distribution or other funds, to any of the Debtor's shareholders, officers or directors; or (iii) redeem any stock in the Debtor or make any installment payment, distribution or other transfer to any shareholder or former shareholder of the Debtor in connection with a previous stock redemption.

(b)     <u>Administrative Expenses</u>. The Debtor shall not use Cash Collateral to pay any administrative expenses or professional fees of the Debtor or the Debtor's estate, other than quarterly fees due to the United States Trustee's Office and professional fees and expenses specifically identified in the Budget that are incurred by the Debtor in connection with this Chapter 11 Case, provided that such fees and expenses are approved by an order of this Court.

(c)     <u>Termination</u>. The authorization granted to the Debtor under this Order shall terminate upon the earlier of: (a) November 30, 2017 at 4:00 p.m. (prevailing Eastern Time); (b) the entry by the Court of an order denying the Debtor's authorization to use Cash Collateral; or (c) at the option of WashingtonFirst Bank, upon the occurrence of an Event of Default (as hereafter defined) after notice and the expiration of the cure period as

set forth herein. Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of WashingtonFirst Bank with respect to all transactions that occurred prior to the occurrence of any termination, including, without limitation, all replacement liens granted to WashingtonFirst Bank as adequate protection which are provided under this Order, shall remain unimpaired and unaffected by any termination of the Order, shall survive any such termination of the Order, and shall be binding upon the Debtor, its estate, all successors-in-interest to the Debtor, including any Chapter 11 trustee or any Chapter 7 trustee, and all creditors and other parties in interest.

6.      Additional Obligations.  In addition to the terms and conditions set forth in

Paragraph 5 above, the Debtor's use of Cash Collateral is subject to all of the following conditions:

(a)      Financial Information and Reporting.  During the period covered by this Order, the Debtor shall provide WashingtonFirst Bank with the following financial information, documentation and reporting, all in a form and content that is acceptable to WashingtonFirst Bank in all respects:

(i)      Monthly Reports, Leases.  .  The Debtor shall timely (time being of the essence) file all required U.S. Trustee Monthly Operating Reports, and in the event there are any changes in the tenants or the rent amounts for the Property, shall provide a current rent roll for the Property, copies of any new leases or amendments to leases, and such other information and detail as WashingtonFirst Bank may require.

(b)      Taxes.  During the pendency of this Chapter 11 Case, the Debtor will make all payments that the Debtor is required to make to the Internal Revenue Service, the State of Maryland, the Commonwealth of Virginia, and all other taxing authorities ("**Taxing Authorities**") with respect to all forms of taxes that come due after the Petition Date, including, without limitation, federal and state income taxes, real estate property taxes, withholding taxes, personal property taxes and sales taxes (collectively, "**Taxes**"), when and as said payments are due.  At all times hereafter, upon WashingtonFirst Bank's request, the Debtor shall immediately supply WashingtonFirst Bank with written documentation evidencing that all such Taxes have been paid.

(c)      Insurance.  During the pendency of this Chapter 11 Case, the Debtor shall maintain fire, casualty and other hazard insurance with respect to the Property and the other Collateral, in amounts and under such insurance policies as are acceptable to WashingtonFirst Bank. In the event that WashingtonFirst Bank has not been named as a sole loss payee, mortgagee or additional insured under each such policy, as the case may be, the Debtor shall immediately take all steps as are necessary to cause WashingtonFirst Bank to be named as such under each such insurance policy.  All insurance proceeds payable from any such insurance policies, and all insurance proceeds payable in connection with or as a result of any of the Collateral, shall be paid directly to WashingtonFirst Bank to the extent of the indebtedness and obligations that are owed to WashingtonFirst Bank

under the Loan Documents and will be applied by WashingtonFirst Bank to reduce such indebtedness and obligations in such order, proportion or manner as WashingtonFirst Bank, in its sole and absolute discretion, deem appropriate.

(d)    Maintaining Collateral. At all times hereafter, the Debtor shall maintain the Collateral in good repair and shall perform such maintenance and repairs with respect to the Collateral as is customarily performed in connection with assets of this type.

7.    Disbursement from Cash Collateral. The Debtor is strictly prohibited from making any disbursements from Cash Collateral except: (a) as provided for in the Budget or consistent herewith; (b) as hereafter authorized in writing by WashingtonFirst Bank; or (c) as provided for in any order of this Court entered after notice to WashingtonFirst Bank and an opportunity for hearing.

8.    Grant of Replacement Liens. Notwithstanding the provisions of Section 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by Section 552(b) of the Bankruptcy Code, as adequate protection for all present and future Indebtedness and obligations that are owed by the Debtor to WashingtonFirst Bank under the Loan Documents, whether prepetition or post-petition, but only to the extent of any diminution in WashingtonFirst Bank's interest after the Petition Date in Cash Collateral, WashingtonFirst Bank is hereby granted, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, choate, perfected, enforceable and non-avoidable first-priority security interests and liens in, to and against all present and future Rents, proceeds, receipts, accounts, accounts receivable, products and profits arising from or as a result of the Property or any other Prepetition Collateral (collectively, the "**Post-petition Collateral**" and, together with the Prepetition Collateral, the "**Collateral**"). The liens and security interests granted to WashingtonFirst Bank pursuant to this Section shall at all times be senior to the rights of the Debtor and shall be superior in priority to the security interests and liens of WashingtonFirst Bank existing prior to the Petition Date. Other than as specifically set forth

herein, the liens, security interests, and remedies granted to WashingtonFirst Bank under this Order shall not be modified, altered or impaired in any manner by any plan of reorganization or order of confirmation for the Debtor, or by any other financings of, extensions of credit to, or incurring of debt by the Debtor, whether pursuant to Section 363 or 364 of the Bankruptcy Code, or otherwise. The liens and security interests granted to WashingtonFirst Bank hereunder shall not be subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtor pursuant to Section 551 of the Bankruptcy Code.

9. <u>Extent of Security Interests</u>. The liens and security interests granted to WashingtonFirst Bank in this Order on the Collateral shall secure payment of: (a) the Indebtedness and all other present and future indebtedness and obligations that are owed by the Debtor to WashingtonFirst Bank under the Loan Documents, whether prepetition or post-petition, in an amount equal to any diminution in value of WashingtonFirst Bank's interest in the Prepetition Collateral that occurs during the pendency of this Chapter 11 Case, whether such diminution is a consequence of (i) the Debtor's use of Collateral (including the Debtor's consumption of Cash Collateral), (ii) depreciation or price fluctuation in the Collateral, (iii) the conversion of such Prepetition Collateral into Post-petition Collateral, or (iv) any other action, event or circumstance (such as any recoveries from avoidance actions); and (b) all fees, costs and expenses of WashingtonFirst Bank arising on or after the Petition Date under or in connection with the Loan Documents, the Motion, this Order, or the Debtor's Chapter 11 Case to the extent such fees, costs and expenses are allowable under Section 506(b) of the Bankruptcy Code (collectively, the "**Adequate Protection Obligations**").

10. <u>No Filing or Recording Necessary</u>. All agreements, rights, licenses, security interests, deeds of trust, liens and lien rights contemplated or granted by this Order are deemed

effective, attach and are perfected as of the commencement of the Petition Date without the necessity of any further filing or recording by WashingtonFirst Bank. Notwithstanding any otherwise applicable requirements under any state or federal law, WashingtonFirst Bank shall not be required to file financing statements or any other documents in any jurisdiction or take any other action in order to perfect its security interests and liens granted under or pursuant to this Order, provided however that nothing in this Order shall be deemed to prohibit WashingtonFirst Bank's filing of any such documents. Such security interests and perfection shall be binding, to the extent that the post-petition liens granted to WashingtonFirst Bank herein replace properly perfected prepetition liens, upon any subsequently appointed trustee either in Chapter 11 or any other Chapter of the Bankruptcy Code and upon all creditors of the Debtor who have extended or who may hereafter extend credit to the Debtor or the debtor-in-possession.

11. <u>Use of Cash Collateral; Adequate Protection Payments</u>. As additional adequate protection for WashingtonFirst Bank's interests in the Cash Collateral, immediately upon the entry of this Order, and continuing at all times thereafter, the Debtor shall use WashingtonFirst Bank's Cash Collateral to pay the ongoing expenses of the Property, as set forth in the Budget, and shall also use such Cash Collateral to: (a) pay for adequate insurance for the Property; (b) pay for any real estate taxes owed against the Property; (c) maintain the Property in good repair; and (d) to make the payment to WashingtonFirst Bank called for below. In addition, as further adequate protection for WashingtonFirst Bank's consent to the Debtor's use of Cash Collateral, on or before 3:00 p.m. on October 10, 2017, the Debtor shall deliver to WashingtonFirst Bank, in immediately available funds, a payment in the amount of $19,862.70 (the "**Adequate Protection Payment**"). Further, payment in the same amount shall be made on the 10th day of October 2017 and November 2017.

12.  <u>Accrual of Interest</u>.  Subject to the provisions of Section 506 of the Bankruptcy Code, interest shall continue to accrue on the unpaid principal balance that is owed to WashingtonFirst Bank under the Note at the applicable rate of interest specified therein until all amounts owed under the Loan Documents have been paid in full.

13.  <u>No Encumbrances, Sale or Transfer of Collateral</u>.  No further encumbrances of any kind or type, whether voluntary or involuntary, shall be placed against any of the Debtor's assets without the prior written consent of WashingtonFirst Bank or order of this Court.  The Debtor shall not sell the Collateral or any portion of the Collateral, without WashingtonFirst Bank's prior written consent or by an order of this Court.

14.  <u>Binding Effect of Order</u>.  Unless otherwise provided herein, the terms and conditions of this Order relating to the liens, security interests and priorities granted to WashingtonFirst Bank herein shall be binding upon the Debtor, its estate, all of the Debtor's creditors and all other parties-in-interest; provided, however, that nothing contained in this Section shall constitute a waiver of any rights that creditors or other parties-in-interest may have to object to the liens, security interests or priorities granted to WashingtonFirst Bank herein for a period of time equal to the greater of seventy-five (75) days from the date of the entry of this Order or sixty (60) days from the date of formation of a creditors' committee for this Chapter 11 Case. This binding effect is an integral part of the agreement of the Debtor and WashingtonFirst Bank evidenced hereby.  Except to the extent otherwise provided for above, no obligation, payment, transfer or grant of security in favor of WashingtonFirst Bank as authorized by or pursuant to the Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

15. _Access to Books and Records_. In addition to the foregoing protections, the Debtor shall fully comply with its obligations, and shall not breach any material representation or warranty as set forth in the Loan Documents with respect to: (a) access to the Debtor's books and records and the Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral; (b) financial and other reporting; (c) inspections and audits (other than an annual accounting audit), and (d) maintenance and preservation of the Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral, except that the Debtor need not comply with representations as to the absence of any proceeding such as the Debtor's Chapter 11 Case. In addition to the inspection of records permitted by the Loan Documents, the Debtor shall allow WashingtonFirst Bank to review and copy, upon prior written request: (a) all vouchers, invoices, contracts, leases and other writings relating to any and all disbursements made or obligations incurred by the Debtor with respect to the maintenance and operation of its business; and (b) any and all other books and records of the Debtor pertaining to the Debtor's use of Cash Collateral.

16. _Events of Default_. WashingtonFirst Bank may terminate the Debtor's use of Cash Collateral: (i) upon a default under the terms of this Order, or if the Debtor fails to comply with any term or condition set forth herein; (ii) if the Debtor's use of Cash Collateral exceeds its limits set forth in the Budget and this Order; (iii) if this Order is modified, stayed, or amended without the consent of WashingtonFirst Bank; (iv) if a claim or action is instituted, the purpose of which is to seek or obtain any relief invalidating, setting aside, avoiding or subordinating, the Indebtedness, the Loan Documents or WashingtonFirst Bank's liens, security interests, mortgages, rights of setoff, or claims in the Collateral; (v) if the Debtor discontinues its business or is ordered to discontinue its business; (vi) if the Debtor's Chapter 11 Case is converted or dismissed; (vii) if the Debtor files a motion seeking to convert or dismiss the Debtor's Chapter 11 Case, or if any other

party in interest files such a motion and fails to dismiss the same within 30 days of the date of filing; or (viii) if the Debtor institutes an action seeking the granting or imposition, under Section 364 of the Bankruptcy Code or otherwise, liens, security interests, or mortgages on any of the Collateral equal or superior to WashingtonFirst Bank's interest in that property (individually, an "**Event of Default**, and collectively, "**Events of Default**").  In addition to the above Events of Default, the Debtor shall continue to comply with the terms and conditions of the Loan Documents going forward to the extent not modified herein.

17.    <u>Rights Upon Event of Default</u>.  Upon the occurrence of an Event of Default hereunder and the failure of the Debtor to cure the same within 5 days of the date of written notice from WashingtonFirst Bank's counsel to the Debtor's counsel advising the Debtor of the occurrence of the Event of Default, or upon the expiration of the Debtor's authorization to use Cash Collateral as provided for in Section 5 above: (a) the Debtor will immediately cease and be enjoined from using Cash Collateral and will provide appropriate evidence to WashingtonFirst Bank of the Debtor's cessation of the use of Cash Collateral;  Furthermore, upon the expiration of the Debtor's authorization to use Cash Collateral as provided for in Section 5 above or the occurrence of an Event of Default hereunder and the failure of the Debtor to cure the same within 5 days of the date of written notice from WashingtonFirst Bank's counsel to the Debtor's counsel advising the Debtor of the occurrence of the Event of Default, WashingtonFirst Bank, immediately thereafter, shall be entitled to seek such relief from the Bankruptcy Court as may be necessary to protect WashingtonFirst Bank's interest in the Cash Collateral and the other Collateral.  Upon the entry of this Order, no party in interest shall have the right to contest the enforcement of the remedies set forth in this Order on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party in interest shall have the right to

enjoin any such enforcement under Section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of this Order. The rights and remedies of WashingtonFirst Bank specified herein are cumulative and not exclusive of any rights or remedies that WashingtonFirst Bank may have under the Loan Documents, applicable law or otherwise. The Debtor shall cooperate fully with WashingtonFirst Bank (and its various professionals) in connection with WashingtonFirst Bank's exercise of any rights and remedies under the Loan Documents and this Order, whether against the Collateral or otherwise.

18.     Additional Relief. WashingtonFirst Bank may at any time file a motion with this Court seeking any such additional protection as it may require with respect to the Debtor's continued use of Cash Collateral or otherwise, including, without limitation, modification or termination of this Order. Nothing contained herein shall prevent the Debtor or any other party-in-interest from opposing such a motion. Nothing contained herein shall be deemed to constitute an admission by WashingtonFirst Bank that its interests in the Prepetition Collateral or the Post-petition Collateral are adequately protected within the meaning of Section 361 of the Bankruptcy Code now or at some future time. WashingtonFirst Bank retains all rights and remedies available to WashingtonFirst Bank pursuant to the Loan Documents, the Bankruptcy Code or any other applicable law including, without limitation, WashingtonFirst Bank's right to seek different or additional forms of adequate protection, WashingtonFirst Bank's right to move for relief from the automatic stay with respect to the Collateral and all of WashingtonFirst Bank's other rights and remedies under the Loan Documents, applicable bankruptcy law and all other applicable laws.

19.     Effect of Future Modification of Order. Except to the extent otherwise provided for herein, no subsequent stay, modification, termination, failure to extend the term of or vacation of this Order shall affect, limit or modify any claim, right or lien granted hereunder to

WashingtonFirst Bank incurred pursuant to this Order or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability or perfection of any security interest, lien, mortgage or priority granted or reaffirmed in connection therewith; provided, however, that nothing contained in this Section shall constitute a waiver of any rights that creditors or other parties-in-interest may have to object to the liens, security interests or priorities granted to WashingtonFirst Bank herein for a period of time equal to the greater of seventy-five (75) days from the date of the entry of this Order or sixty (60) days from the date of formation of a creditors' committee for this Chapter 11 Case.

20. <u>No Requirement to Lend</u>. Nothing contained in this Order shall require or be deemed to require WashingtonFirst Bank to make any additional loan or loans or to extend further credit or other financial accommodations to or for the benefit of the Debtor.

21. <u>Effect of Dismissal</u>. In the event that the Debtor's Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, neither the entry of this Order nor the dismissal or conversion of the Chapter 11 Case shall affect the rights of WashingtonFirst Bank under the Loan Documents or the terms and conditions of this Order, including the liens and security interests granted herein, and all the rights and remedies of WashingtonFirst Bank hereunder shall be and remain in full force and effect as if the Chapter 11 Case had not been filed or the Chapter 11 Case had not been dismissed, converted or superseded.

22. <u>No Effect on Other Rights</u>. This Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict, or nullify any rights of WashingtonFirst Bank with respect to any guarantor, person or entity other than the Debtor, nor to release, alter, impair, affect or abrogate any debts, claims, demand, actions and causes of action in law and equity, whether known or unknown, that WashingtonFirst Bank may have as to any guarantor, person or entity other than the

Debtor (including, without limitation, any non-debtor guarantors) under the Loan Documents, applicable law, or otherwise. WashingtonFirst Bank expressly reserves all rights, remedies and interests that it has or may have under the Loan Documents, applicable law, or otherwise. Failure or delay by WashingtonFirst Bank to insist upon strict performance of any one or more of the provisions of this Order or to exercise any right, power, or remedy upon default under or breach of, this Order shall not constitute a waiver of, or preclude WashingtonFirst Bank from exercising, any right, power or remedy. WashingtonFirst Bank specifically reserves all of its rights, remedies and interests under the Loan Documents, all other agreements and documents and applicable law.

23. <u>Good Faith</u>. To the extent of any usage of Cash Collateral during the period set forth in this Order, the Court finds that WashingtonFirst Bank has acted in "good faith" in all respects and on terms as would otherwise be found in an arm's length transaction and in the event of any appeal of this Order, any Cash Collateral used shall be final and non-appealable, unless the party to such appeal shall have obtained a stay of this Order pursuant to the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure.

24. <u>Budget</u>. Solely by agreeing to the use of Cash Collateral by the Debtor to make the expenditures set forth on the Budget, in making any decision to release Cash Collateral for the uses and in the amounts specified in the Budget, and by taking any other actions pursuant to this Order, WashingtonFirst Bank shall not be deemed to have assumed any liability to any third party, and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor or its assets. No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Order.

25.   <u>No Waiver of Prepetition Defaults</u>.  (a) The entry of this Order shall not constitute a waiver of any prepetition default or of any right or remedy of WashingtonFirst Bank under applicable non-bankruptcy law; and (b) the Loan Documents and the terms and conditions thereof shall remain in full force and effect, and WashingtonFirst Bank shall be entitled to all rights and privileges thereunder.

26.   <u>Investigation of Prepetition Liens</u>.  No portion of the Prepetition Collateral, the Post-petition Collateral, Cash Collateral, disbursements set forth in the Budget, or the proceeds thereof, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with investigating or asserting any claims or causes of action against WashingtonFirst Bank, including, without limitation, any action challenging or raising any defenses to the Indebtedness or WashingtonFirst Bank's liens and security interests in the Collateral.

27.   <u>Signature of the Debtor</u>.  The signature of any officer or attorney of the Debtor submitted in writing and accepted by WashingtonFirst Bank in writing, whether by letter, facsimile, or email to WashingtonFirst Bank or appearing on any one or more of the aforesaid security agreements, instruments or documents, shall bind the Debtor with respect to documents executed and other actions taken pursuant to this Order.

28.   <u>Modification of Automatic Stay</u>.  The automatic stay of Section 362 of the Bankruptcy Code is hereby modified as to WashingtonFirst Bank and the Collateral to the extent necessary to implement the terms of this Order and to permit WashingtonFirst Bank to implement the provisions hereof, including, without limitation, permitting WashingtonFirst Bank, as appropriate, *inter alia*: (a) to receive and apply collection, payments or proceeds of Collateral; and

(b) to file any financing statements or other instruments and documents, if any, evidencing its liens and security interests in and to the Collateral.

29.    <u>Limitation on Borrowing</u>.  In further consideration for WashingtonFirst Bank's consent to the Debtor's use of Cash Collateral, neither the Debtor nor any party acting on its behalf (including, without limitation, any Committee) may seek authorization for the Debtor to borrow money from any person other than WashingtonFirst Bank to the extent that the repayment of such borrowings is to be secured pursuant to Section 364(d)(1) of the Bankruptcy Code by a lien or security interest that is senior or equal to the liens and security interests held by WashingtonFirst Bank on the Prepetition Collateral or Post-petition Collateral, <u>unless</u> WashingtonFirst Bank hereafter consents to such borrowings in writing or the Debtor provides for the immediate indefeasible payment in full in cash of all Indebtedness and other amounts owed to WashingtonFirst Bank under the Loan Documents at closing in connection with such borrowings.

30.    <u>Vacating of Order</u>.  If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect: (a) the validity of any benefit granted to WashingtonFirst Bank pursuant to this Order with respect to any Cash Collateral released by WashingtonFirst Bank to the Debtor prior to the later of (i) the effective date of such stay, modification, or vacation, or (ii) the date of receipt of written notice thereof by counsel to WashingtonFirst Bank at each of the addresses listed at the end of this Order (the "**Effective Time**"), or (c) the validity and enforceability of any lien, security interest, mortgage or priority authorized hereby. Notwithstanding any such stay, modification, or vacation, any use of Cash Collateral made pursuant to this Order prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

31. <u>Notices</u>. Any notice which may be required to be given by WashingtonFirst Bank to the Debtor or vice versa shall be sufficient if such notice is sent by email transmission, hand delivery, federal express or regular, certified or registered United States mail to:

<table>
<tr><td>Counsel to the Debtor:</td><td>Morgan Fisher, Esquire<br>Law Offices of Morgan Fisher LLC<br>1125 West Street, #227<br>Annapolis, Maryland 21401<br>Email: bk@morganfisherlaw.com</td></tr>
<tr><td>Counsel to WashingtonFirst Bank:</td><td>Dan Press<br>Chung & Press, P.C.<br>6718 Whittier Ave. #200<br>McLean, VA 22101</td></tr>
</table>

32. <u>Notice of Order; Final Approval</u>. Within three (3) business days of the entry of this Order, the Debtor shall serve a notice of this Order to WashingtonFirst Bank, its counsel, the United States Trustee, the twenty (20) largest unsecured creditors of the Debtor, and any other persons that the Debtor knows is entitled to receive notice in this case under Bankruptcy Rule 4001(d) as of such date, and any other party-in-interest from whom the Debtor's attorneys have received a written request for notice in this case before 2:00 p.m. (prevailing East Coast time) on such date to receive such pleadings. The notice of this Order shall state that any creditor or other party-in-interest objecting to final approval of this Order shall file a written objection with the United States Bankruptcy Court Clerk for the District of Maryland (Alexandria Division) within fourteen (14) days after the entry of this Order, which objection shall be served so that the same is received on or before 4:00 p.m. (prevailing Eastern time) on such date by counsel for the Debtor and counsel for WashingtonFirst Bank set forth at the end of this Order (at each of the addresses set forth therein). If any objection is timely filed, served, and received, a written reply thereto shall not be required but may be filed and served so that it is received by the objecting party and the other

parties set forth above no later than one (1) business day prior to the date of the hearing. A hearing shall be held on any objections to the entry of this Order before this Court on a date and time scheduled by the Court. Notwithstanding the foregoing, the provisions of this Order are hereby approved and shall remain in full force and effect unless modified or vacated (a) after a hearing on a timely filed objection, or (b) by other subsequent order of this Court. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall be subject to the provisions of this Order. Accordingly, unless and until any subsequent order is entered by this Court, the Debtor and WashingtonFirst Bank may continue to rely on the provisions of this Order, and conduct themselves in accordance therewith.

33.     Further extensions of this Order shall be permitted without a hearing subject to notice and no objection being raised.

**End of Order**

**CONSENTED AND AGREED TO:**

By:  /s/ Morgan Fisher
      Morgan Fisher, Esquire
      Law Offices of Morgan Fisher LLC
      1125 West Street, #227
      Annapolis, Maryland 21401
      Phone:  (410) 626-6111
      Email:    bk@morganfisherlaw.com

      *Attorney for Debtor, First Flight Limited Partnership*

By:  /s/ Dan Press
      Dan Press
      Chung & Press, P.C.
      6718 Whittier Ave. #200
      McLean, VA 22101
      *Attorneys for WashingtonFirst Bank*

**EXHIBIT A**
**(Budget)**

Case 1:18-cv-00521-TSE-JDR Document 19-5 Filed 06/19/18 Page 24 of 24 PageID# 207
Case 17-18645 Doc 94 Filed 06/19/18 Page 24 of 24

Case 17-18645 Doc 13-1 Filed 06/28/17 Page 26 of 26

6/28/2017

**First Flight Limited Partnership**
c/o Brentwood Management, LLC
4080 Lafayette Center Drive Suite 360
Chantilly, Virginia 20151
(703) 378-3060
(703) 378-3061 FAX

**Topflight Airpark Warehouse & Office Buildings**
**Operating Statement: Budget 2017**

| | 1st Quarter Entire Facility | 1st Quarter Office Building | 1st Quarter Warehouse | 2nd Quarter Entire Facility | 2nd Quarter Office Building | 2nd Quarter Warehouse | 3rd Quarter Entire Facility | 3rd Quarter Office Building | 3rd Quarter Warehouse | 4th Quarter Entire Facility | 4th Quarter Office Building | 4th Quarter Warehouse | PYE Entire Facility | PYE Office Building | PYE Warehouse |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | | | | | |
| Rental Income | 152,770.56 | 105,595.56 | 47,175.00 | 152,770.56 | 105,595.56 | 47,175.00 | 152,770.56 | 105,595.56 | 47,175.00 | 152,770.56 | 105,595.56 | 47,175.00 | 611,082.24 | 422,382.24 | 188,700.00 |
| Utilities - Electric | 1,500.00 | 1,500.00 | | 1,500.00 | 1,500.00 | | 1,500.00 | 1,500.00 | | 1,500.00 | 1,500.00 | | 6,000.00 | 6,000.00 | |
| Utilities - Gas | 750.00 | 750.00 | | 750.00 | 750.00 | | 75.00 | 75.00 | | 300.00 | 300.00 | | 1,875.00 | 1,875.00 | |
| Real Estate Taxes | | | | | | | 5,200.00 | 5,200.00 | | | | | 5,200.00 | 5,200.00 | |
| Interest Income | 18.00 | 1.45 | 16.55 | 18.00 | 1.45 | 16.55 | 18.00 | 1.45 | 16.55 | 18.00 | 1.45 | 16.55 | 72.00 | 5.82 | 66.18 |
| Other Income | | | | | | | | | | | | | | | |
| | 155,038.56 | 107,847.01 | 47,191.55 | 155,038.56 | 107,847.01 | 47,191.55 | 159,563.56 | 112,372.01 | 47,191.55 | 154,588.56 | 107,397.01 | 47,191.55 | 624,229.24 | 435,463.06 | 188,766.18 |
| **Expenses** | | | | | | | | | | | | | | | |
| Equipment Fuel | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 1,200.00 | 960.00 | 240.00 |
| Bank Charges | 72.00 | 57.60 | 14.40 | 72.00 | 57.60 | 14.40 | 72.00 | 57.60 | 14.40 | 72.00 | 57.60 | 14.40 | 288.00 | 230.40 | 57.60 |
| Insurance - Commercial Package | 18,000.00 | 14,400.00 | 3,600.00 | 18,000.00 | 14,400.00 | 3,600.00 | 18,000.00 | 14,400.00 | 3,600.00 | 18,000.00 | 14,400.00 | 3,600.00 | 72,000.00 | 57,600.00 | 14,400.00 |
| Insurance - Workman's Comp. | 1,200.00 | 960.00 | 240.00 | 1,200.00 | 960.00 | 240.00 | 1,200.00 | 960.00 | 240.00 | 1,200.00 | 960.00 | 240.00 | 4,800.00 | 3,840.00 | 960.00 |
| Legal and Professional Expense | 10,500.00 | 8,400.00 | 2,100.00 | 10,500.00 | 8,400.00 | 2,100.00 | 10,500.00 | 8,400.00 | 2,100.00 | 10,500.00 | 8,400.00 | 2,100.00 | 42,000.00 | 33,600.00 | 8,400.00 |
| Maintenance Expense | 12,000.00 | 9,600.00 | 2,400.00 | 12,000.00 | 9,600.00 | 2,400.00 | 12,000.00 | 9,600.00 | 2,400.00 | 12,000.00 | 9,600.00 | 2,400.00 | 48,000.00 | 38,400.00 | 9,600.00 |
| Management Fees | 6,000.00 | 4,800.00 | 1,200.00 | 6,000.00 | 4,800.00 | 1,200.00 | 6,000.00 | 4,800.00 | 1,200.00 | 6,000.00 | 4,800.00 | 1,200.00 | 24,000.00 | 19,200.00 | 4,800.00 |
| Office Expense | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 2,400.00 | 1,920.00 | 480.00 |
| Printing, Postage, & Shipping | 60.00 | 48.00 | 12.00 | 60.00 | 48.00 | 12.00 | 60.00 | 48.00 | 12.00 | 60.00 | 48.00 | 12.00 | 240.00 | 192.00 | 48.00 |
| Propane | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 2,400.00 | 1,920.00 | 480.00 |
| Roof Repairs/Repairs | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 600.00 | 480.00 | 120.00 | 2,400.00 | 1,920.00 | 480.00 |
| Taxes - Payroll | 3,600.00 | 2,880.00 | 720.00 | 3,600.00 | 2,880.00 | 720.00 | 3,600.00 | 2,880.00 | 720.00 | 3,600.00 | 2,880.00 | 720.00 | 14,400.00 | 11,520.00 | 2,880.00 |
| Taxes - Real Estate & Personal Property | | | | | | | 112,014.59 | 33,093.11 | 78,921.48 | | | | 112,014.59 | 33,093.11 | 78,921.48 |
| Telephone Service | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 1,200.00 | 960.00 | 240.00 |
| Salaries & Wages | 10,065.60 | 8,052.48 | 2,013.12 | 10,065.60 | 8,052.48 | 2,013.12 | 10,065.60 | 8,052.48 | 2,013.12 | 10,065.60 | 8,052.48 | 2,013.12 | 40,262.40 | 32,209.92 | 8,052.48 |
| U.S. Trustee Fees | 4,850.00 | 3,233.33 | 1,616.67 | 4,850.00 | 3,233.33 | 1,616.67 | 4,850.00 | 3,233.33 | 1,616.67 | 4,850.00 | 3,233.33 | 1,616.67 | 19,400.00 | 12,933.33 | 6,466.67 |
| Utilities - Electric | 20,700.00 | 13,800.00 | 6,900.00 | 20,700.00 | 13,800.00 | 6,900.00 | 20,700.00 | 13,800.00 | 6,900.00 | 20,700.00 | 13,800.00 | 6,900.00 | 82,800.00 | 55,200.00 | 27,600.00 |
| Utilities - Gas | 11,270.00 | 6,311.20 | 4,958.80 | 6,440.00 | 3,606.40 | 2,833.60 | 1,200.00 | | | 1,610.00 | 901.60 | 708.40 | 19,320.00 | 10,819.20 | 8,500.80 |
| Utilities - Water & Sewer | 5,250.00 | 4,200.00 | 1,050.00 | 5,250.00 | 4,200.00 | 1,050.00 | 5,250.00 | 4,200.00 | 1,050.00 | 5,250.00 | 4,200.00 | 1,050.00 | 21,000.00 | 16,800.00 | 4,200.00 |
| Utilities - Trash | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 300.00 | 240.00 | 60.00 | 1,200.00 | 960.00 | 240.00 |
| Other Expenses | | | | | | | | | | | | | | | |
| | 106,267.60 | 78,902.61 | 27,364.99 | 101,457.60 | 76,197.81 | 25,239.79 | 207,012.19 | 105,684.52 | 101,327.67 | 96,607.60 | 73,493.01 | 23,114.59 | 511,324.99 | 334,277.96 | 177,047.03 |